White, J.
This is a proceeding in error instituted to-obtain the reversal of the judgment of the Superior Court of Cleveland. The original petition was filed to foreclose a mortgage executed by the defendant in error to the-plaintiff-in error. On the trial the court found there was nothing due on the mortgage and dismissed the petition.
The plaintiff is claimed to be a corporation under the act of February 21,1867, entitled “ an act to enable associations of persons for raising funds to be loaned among their members for building them homesteads and other purposes,, to become bodies corporate.”
The first section of the act provides that, for the purposes therein declared, “ any number of persons, not less-than five, may associate themselves together and become a corporation, as provided in sections 68, 64, and 65 of the act entitled ‘an act to provide for the creation and regulation of incorporated companies in the State of Ohio,’ passed May 1, 1852.” The original sections 63 and 65 of the last-named act were repealed May 1,1858, and amended, sections substituted.
It is contended that the act of February 21, 1867, under which the plaintiff claims to be incorporated, refers to the-original repealed sections of the act of 1852, and that it is, for this reason, invalid. But we think it clear that the-reference is to the amended and not to the original sections. It is therefore unnecessary to inquire as to what would. *213 have been the effect if the reference had been to the repealed sections. The reference in the act of February 21, 1867, is to the sections named in the act of 1852, as the act was then in force.
It is also claimed that the act of 1867 undertakes to amend sections 63, 64, and 65 of the act of 1852, and thus is in conflict with section 16, article 2, of the constitution, which declares that “ no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended ; and the section or sections so amended shall be repealed.”
The act in question does not purport to be, nor is it, as seems to us, an amendment of the act of 1852. True, certain sections of the last-named act are referred to as prescribing the course to be pursued by persons desiring to become incorporated, in order to avail themselves of the privileges of the act of 1867. The effect would have been the same if these corporations had been authorized by the original incorporation act of 1852. That act provides for the creation of various classes of corporations with powers distinct and appropriate to their several objects; yet persons desiring to form a corporation of either description, are referred to the saíne sections for the mode of organization. In principle, it does not seem to make any difference whether these various corporations are authorized by the same or by different statutes.
The purpose for which these corporations are authorized, as declared by the act, is, the “ raising of moneys to be loaned among the members for use in buying lots or houses, or in building or repairing houses.” Under the original act of February 21, 1867, the fund from which the loans were to be made was contributed by the members; but by the subsequent acts of May 5, and May 9, 1868, the associations were authorized to receive deposits, and to loan to depositors as well as members. The original act was repealed, but no rights acquired under it were to be affected by the repeal. The loan to the defendant, Gallagher, was made under the original act.
*214 It is claimed that these acts assume to authorize the exercise of banking powers, and are thus in conflict with section 7, article 13, of the constitution, which declares that, no act “ authorizing associations with banking powers, shall take effect until it shall be submitted to the people,” and be approved by a majority of the electors.
Whether a general authority to receive deposits and make loans comes within the meaning of “banking powers,” as these terms are. used in the constitutional provision, or whether the restriction has reference only to the power of issuing paper to circulate as money, we are not called on in the case before us to determine. However this may be, it is quite clear that the collection of money from'the members, and the loaning of it among them for the purposes and in the manner provided for in the act in question, is not the exercise of banking powers. As to the effect of the subsequent provisions authorizing the receiving of deposits and the loaning to depositors, we express no opinion.
The mode prescribed by the statute by which the association was authorized to raise money and carry on its business, is as follows: “Such corporation shall be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans, as the corporation by its by-laws shall adopt; also, to acquire, hold, incumber, and convey all such real estate and personal property as may be legitimately pledged to it on such loans, or may otherwise be transferred to it in the due course of its business ; provided, that the dues, fines, and premiums so paid by members of such corporation, although paid in addition to legal interest on loans taken by them, shall not be construed to make the loans so taken usurious,” etc.
By the rules under which the plaintiff was organized and its business conducted, the' stock was divided into shares of two hundred dollars each. The shareholders were required to pay monthly dues of one dollar on each share of stock by them respectively held, until the aecumula *215 tions of the association should be sufficient to divide to each share of stock two hundred dollars. The payments were then to cease; and as soon as the shareholders had all received the sum of two hundred dollars, or its equivalent, the association was also to cease.
On the 9th day of July, 1867, the defendant being the owner of three shares of stock, obtained a loan from the plaintiff of $803, the difference between that sum and the par value of his stock, namely, $297, being the amount of premium. On this transaction he gave to the association hie secured note for $600, on which he was to pay monthly six dollars. These monthly installments consisted of three dollars, as monthly dues on the three shares of stock, and three dollars as interest on the loan, the interest being computed on the premium as well as on the money advanced. The object of this note, as we understand from the record,, was to secure the payment of the monthly dues on the three shares of stock, the interest that might become due, and the fines that might be assessed against the defendant.
The defendant paid his monthly dues and interest up to-June 9, 1872, when he ceased paying. On the 27th of November, 1872, the note and mortgage in suit was given in exchange for the securities above referred to. This note is for $600, payable to the plaintiff' in four months, with interest payable monthly. This note, like the former, includes in the monthly installments of interest the monthly dues, and interest on both the premium and loan advanced.
The statute does not authorize the exaction of interest on the premium. The exteut of the plaintiff’s demand, exclusive of fines, is to require the payment of the stated dues, and interest on the money advanced, until the time arrives for winding up the affairs of the association. The premium .is then to be accounted for by the borrower as so much advanced toward the redemption or payment of his stock.. Interest is intended by the statute as a compensation for the use of the money the borrower receives. The higher the premiums, the less money the borrower gets, and, if interest can also be charged on the premium, the less *216 money he has to use, the higher the rate of interest he will have to pay for it. A declared object of the statute, as expressed in its title, in authorizing the associations, is to enable their members to obtain for themselves homesteads To justify an exaction so well calculated in its practical results to defeat this object, as this exorbitant demand for interest, the authority for it ought to be unequivocally expressed.
But it may be said that, as there is no limit to the premium that may be allowed, the question as to interest is immaterial; that whether the premium be high and the rate of interest low, or the interest high and the premium low, the result is practically the same.
The borrower is more likely to be imposed on by confounding the interest and the premium. Besides, the statute distinguishes between premiums and loans, and only authorizes interest on the “ loans advanced.” And while it is our duty to enforce the statute according to its true meaning, yet we are also bound to see that it is not made to subserve the purposes of extortion and oppression beyond what its terms require.
The plaintiff* by its by-laws, claims the right to assess a fine for each default in the payment of monthly dues; also for like default in the payment of installments of interest; and, furthermore, it claims the right to repeat this fine monthly so long as the default continues.
A proper construction of the statute does not justify this extraordinary claim. The views of the' members of the court have not been entirely harmonious as to whether an y fine can be assessed for default in payment of dues. But all are agreed that it can not be imposed for default in the payment of interest, and that it can not be imposed more than once in respect to an installment of monthly dues. The ground of this distinction is stated in the opinion in Hagerman et al. v. Ohio Building and Savings Association.
In stating the account between the parties, the court excluded all fines assessed on account of monthly dues. The account was stated by charging the defendant with simple *217 interest on the money advanced, and with the monthly dues on his stock, and by crediting him with the amount paid. By adding to the charges against the defendant the fines legally assessed for defaults in the payment of dues, and by making proper allowances by way of interest, we see no objection to this mode of stating the account.
The court found the defendant had overpaid the amount due, in the sum of $15.28, which was ordered to be applied upon future dues and interest. Eor the reason already stated, this finding was incorrect. . The judgment must therefore be reversed, and the cause remanded for a restatement of the account.
McIlvaine, C. J., Welch, Rex, and Gilmore, «JJ., concurred.